207 Cal.App.3d 1426 (1989)
255 Cal. Rptr. 720
In re the Marriage of KATHLEEN MARIE and LARRY DEAN MARTIN.
KATHLEEN MARIE MARTIN, Appellant,
v.
LARRY DEAN MARTIN, Respondent; DELTA DENTAL PLAN OF MICHIGAN, Respondent.
Docket No. F009815.
Court of Appeals of California, Fifth District.
February 22, 1989.
*1429 COUNSEL
William S. Morris for Appellant.
No appearance for Respondent Husband.
Feldman, Waldman & Kline, Gerald A. Sherwin and Martha J. Shaver for Respondent.
OPINION
BEST, J.
Kathleen Marie Martin appeals from an order quashing service of summons for lack of personal jurisdiction and dismissing a joinder proceeding brought against respondent Delta Dental Plan of Michigan (Delta). For the reasons discussed below, we affirm the judgment (order of dismissal).
Civil Code sections 4363 and 4363.1 authorize joinder of an employee benefit plan in a proceeding under the Family Law Act upon application of a party claiming an interest in the plan. A summons on joinder of Delta was issued on appellant's application in a dissolution action. The purpose of joining the dental plan was to secure assignment of the minor children's insurance benefits directly to appellant. Delta appeared specially to file a motion to quash service of summons for lack of jurisdiction. The declaration in support of Delta's motion to quash states that summons was served on Delta by mail on November 30, 1987.

STATEMENT OF FACTS
Appellant Kathleen Marie Martin obtained a dissolution of marriage from Larry Dean Martin effective May 4, 1987. The judgment required Larry Martin to provide dental insurance for the two minor children of the marriage: "As additional child support, Respondent shall keep in force *1430 hospital, medical and dental insurance coverage for the minor children of the parties through the Respondent's employment, so long as it is available to Respondent."
Larry Martin is a resident of the State of Michigan. As part of group employment benefits, Martin and his dependents were entitled to certain dental insurance coverage under a program administered by respondent Delta. According to a declaration filed in support of the motion to quash, Delta is a nonprofit Michigan corporation, with its principal place of business in Okemos, Michigan. Its only other office is located in Farmington Hills, Michigan. Delta is not licensed to do business in any state but Michigan, and pursuant to its Enabling Act is not required to pay non-Michigan dentists for services performed for Delta subscribers and their dependents. Delta has never advertised or solicited business in the State of California and has never filed any action in any California court or otherwise sought the assistance of the courts of this state. Consistent with its group contract, Delta paid Larry Martin in Michigan for the dental services rendered to his dependents by a California dentist.
Neither a copy of the policy nor a certificate of insurance is a part of the record.
It is stated in the declaration of appellant filed in opposition to the motion that the two minor children of Kathleen and Larry Martin, both California residents, are covered by a policy of dental insurance issued by Delta through Mr. Martin's employment.
Both children received dental services from Dr. Swearingen in his office in Turlock, California during April and May of 1987. A claim relative to these services was filed with Delta. Appellant's declaration states, "I caused a claim to be filed with Delta Dental Plan of Michigan for reimbursement of medical expenses incurred as a result of Dr. Swearingen's treatment of both Nicholas and Shawn Martin in the total amount of $152.00." It is not clear from the record in what manner the claim was submitted to Delta. Delta "presumes" that the father filed the claim. In any event, Delta made payment on the claim to the "subscriber," Larry Martin, in Michigan. Delta did not directly pay the California dentist for services provided.
Payment of the claim to Larry Martin was acknowledged through claim payment vouchers which are a part of the record. Appellant argues that the claim vouchers were mailed by Delta directly to Dr. Swearingen in California, but there is no competent evidence in the record to verify this. Appellant has received no reimbursement from either Delta or Larry Martin.
*1431 No direct contact between the State of California and Delta is evidenced in the record.

DISCUSSION

Whether Delta Had Sufficient Contacts With California to Satisfy the Requirements of Due Process For Personal Jurisdiction Over a Foreign Corporation
(1a) Appellant contends that compliance with the requirements for substituted service established in Insurance Code[1] sections 1610 and 1611 is sufficient to establish personal jurisdiction over a foreign insurer. These statutes provide as follows: "Any of the acts described in Section 1611, when effected in this State, by mail or otherwise, by a foreign or alien insurer which is nonadmitted at the time of the solicitation, issuance or delivery by it of contracts of insurance to residents of, or to corporations authorized to do business in, this State, is equivalent to and shall constitute an appointment by such insurer of the commissioner and his successor or successors in office to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contracts of insurance, and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this State upon such insurer." (§ 1610.)
"The acts referred to in Section 1610 are: [¶] (1) The issuance or delivery to residents of, or to corporations authorized to do business in, this State of contracts of insurance insuring (a) the lives or persons of residents of this State physically present herein at the time of such issuance or delivery or (b) property or operations located in this State.
"(2) The solicitation of applications for such contracts.
"(3) The collection of premiums, membership fees, assessments or other considerations for such contracts.
"(4) Any other transaction of business arising out of such contracts." (§ 1611.)
Appellant claims that section 1610 applies here because "the action or work involved with the medical treatment of the minor children would be an operation taking place within this state, and the payment of benefits *1432 would be a transaction of business arising from coverage of this `operation.'" In other words, appellant contends that dental services constituted a covered "operation" and payment of the claim to the subscriber in Michigan amounted to a "transaction of business arising out of" a policy of insurance covering "property or operations located in this State." (§ 1611, subds. (1) and (4).) Appellant argues that this single act is sufficient to provide the minimum contacts necessary for jurisdiction over a foreign corporation.
Appellant also contends that the existence of a single contract of insurance covering a California resident is sufficient to establish jurisdiction against a foreign corporation under the authority of McGee v. International Life Ins. Co. (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199].
Sections 1610 through 1620 are known as the Unauthorized Insurers Process Act. These service of process statutes were added in 1949. (Stats. 1949, ch. 495.) Section 1 of the act states: "The purpose of this act is to subject certain insurers to the jurisdiction of courts of this State in suits by or on behalf of insured or beneficiaries under insurance contracts. The Legislature declares that it is a subject of concern that nonadmitted insurers have issued policies of insurance to residents of the State physically present herein at the time of such issuance, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies; that this State has an interest in providing to its residents a convenient forum for the purpose of asserting and enforcing legal rights under such policies; that if such residents are left to seek remedy in distant forums they will be, for practical purposes, without remedy. In furtherance of such state interest, the Legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this statute, what constitutes doing business in this State, and also exercises powers and privileges available to the State by virtue of Public Law 15, 79th Congress of the United States, Chapter 20, First Session, S. 340, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states."
(2) "In order to secure personal jurisdiction over a nonresident defendant by service of summons by mail outside California, the trial court must have power to exercise such jurisdiction under section 410.10 of the Code of Civil Procedure which provides: `A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.'" (Kulko v. Superior Court (1977) 19 Cal.3d 514, 520-521 [138 Cal. Rptr. 586, 564 P.2d 353], reversed on other grounds in Kulko v. *1433 California Superior Court (1978) 436 U.S. 84 [56 L.Ed.2d 132, 145, 98 S.Ct. 1690].)
(1b) Appellant contends that the basis for jurisdiction over Delta in this case is contained in section 1611. Not so. The basis for jurisdiction over a nonresident defendant, or, in other words, the power of a trial court to exercise jurisdiction over a nonresident defendant, must be found under section 410.10 of the Code of Civil Procedure.
"If some basis for personal jurisdiction exists, the state, through its courts, may obtain jurisdiction of the person. But the constitutional guarantee of due process must be satisfied by (1) employing a reasonable method of notice, and (2) giving a reasonable opportunity for hearing." (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 84, p. 454.)
Appellant confuses "basis for jurisdiction over a nonresident defendant" with "obtain[ing] jurisdiction of the person" of a nonresident defendant. Sections 1610 and 1611 are simply service of process statutes providing that specified acts by a nonresident insurer not admitted to do business in this state shall constitute an appointment by such insurer of the Insurance Commissioner as attorney for the service of process. (People v. United National Life Ins. Co. (1967) 66 Cal.2d 577, 599 [58 Cal. Rptr. 599, 427 P.2d 199].) However, before sections 1610 and 1611 may be utilized to obtain jurisdiction over a nonresident insurer, the power to exercise jurisdiction over that insurer must be found to exist pursuant to Code of Civil Procedure section 410.10. Before addressing this issue, we note that in this case there was no showing below the appellant utilized sections 1610 and 1611 by serving the Insurance Commissioner, but rather, service was made on Delta by mail.
(3) "[T]he United States Supreme Court has defined the parameters of the power of the states to compel nonresidents to defend suits brought against them in the state's courts. [Citations.] The general rule is that the forum state may not exercise jurisdiction over a nonresident unless his relationship to the state is such as to make the exercise of such jurisdiction reasonable." (Cornelison v. Chaney (1976) 16 Cal.3d 143, 147 [127 Cal. Rptr. 352, 545 P.2d 264].) "The test to determine if jurisdiction is proper is not mechanical (Burger King Corp. v. Rudzewicz (1985) 471 U.S. 462, 478, 485-486 [85 L.Ed.2d 528, 544, 549-550, 105 S.Ct. 2174]), but rather the courts look at various factors to determine if the defendant has `minimum contacts' with the forum state. (Internat. Shoe Co. v. Washington, supra, [1945] 326 U.S. [310] at p. 316 [90 L.Ed. (95) at p. 102 (66 S.Ct. 154, 161 A.L.R. 1057)].)" (Professional Travel, Inc. v. Kalish & Rice, Inc. (1988) 199 Cal. App.3d 762, 765-766 [245 Cal. Rptr. 159].)
*1434 (4) "`If a defendant has sufficient extensive "contacts" with the forum state, it may be subject to suit there on all claims wherever they arise [general jurisdiction]. (Helicopteros Nacionales, supra, [1984] 466 U.S. [408] at p. 414 [80 L.Ed.2d 404, 411, 104 S.Ct. 1868].) In other cases, the jurisdictional sufficiency of the defendant's contacts depends on an assessment of the "`relationship among the defendant, the forum, and the litigation'" [specific jurisdiction.] (Helicopteros Nacionales, supra, 466 U.S. 408, 414....)' (J.M. Sahlein Music Co., Inc. v. Nippon Gakki Co., Ltd. (1987) 197 Cal. App.3d 539, 542 [243 Cal. Rptr. 4].)" (Sammons Enterprises, Inc. v. Superior Court (1988) 205 Cal. App.3d 1427, 1432-1433 [253 Cal. Rptr. 261].)
(5a) Relying almost exclusively upon the decision of the United States Supreme Court in McGee v. International Life Ins. Co., supra, 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199], appellant contends that the existence of a single contract of insurance covering a California resident is sufficient to establish jurisdiction against a foreign corporation. In that case, Lulu McGee recovered a default judgment against International Life in a California court. The corporation was not served with process in California but by registered mail at its principal place of business in Texas pursuant to sections 1610-1620. Lulu McGee filed suit on the judgment in Texas but the Texas court refused to enforce her judgment holding it was void under the Fourteenth Amendment because service of process outside of California could not give the California court jurisdiction over the corporation.
The underlying facts are set forth in McGee as follows: "In 1944, Lowell Franklin, a resident of California, purchased a life insurance policy from the Empire Mutual Insurance Company, an Arizona corporation. In 1948 the respondent agreed with Empire Mutual to assume its insurance obligations. Respondent then mailed a reinsurance certificate to Franklin in California offering to insure him in accordance with the terms of the policy he held with Empire Mutual. He accepted this offer and from that time until his death in 1950 paid premiums by mail from his California home to respondent's Texas office. Petitioner, Franklin's mother, was the beneficiary under the policy. She sent proofs of his death to the respondent but it refused to pay claiming that he had committed suicide. It appears that neither Empire Mutual nor respondent has ever had any office or agent in California. And so far as the record before us shows, respondent has never solicited or done any insurance business in California apart from the policy involved here." (McGee v. International Life Ins. Co., supra, 355 U.S. at pp. 221-222 [2 L.Ed.2d at p. 225].)
The high court, pointing out that "The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died," first held, "It is sufficient for purposes of due *1435 process that the suit was based on a contract which had substantial connection with [California]." (Id. at p. 223 [2 L.Ed.2d at p. 226].) The court then rejected International Life's contention that application of California Insurance Code sections 1610-1620 to the existing policy, which was issued to Franklin before those statutes became effective in 1949, improperly impaired the obligation of contract.
Contrary to appellant's contention here, McGee does not hold that the simple fact that beneficiaries of an insurance policy issued by a foreign corporation reside in California is sufficient to establish personal jurisdiction over that corporation. (1c) Nor does McGee hold that an act or acts by a foreign insurer as described in section 1611 constitute a basis for jurisdiction over a nonresident defendant. As was pointed out earlier, sections 1610 and 1611 are simply service of process statutes. California cannot stretch the state's jurisdiction beyond that allowed by the due process clause of the Fourteenth Amendment. (Code Civ. Proc., § 410.10.) Conduct within the concept of section 1611 can only confer jurisdiction on the California courts when that conduct is sufficient to establish the "minimum contacts" contemplated in Internat. Shoe Co. v. Washington (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]. The McGee decision is not inconsistent with this requirement.
(5b) Noting that it has become much less burdensome for a foreign corporation to defend itself in a state where it "engages in economic activity," the court in McGee held that "the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." (McGee v. International Life Ins. Co., supra, 355 U.S. 220, 223 [2 L.Ed.2d at p. 226], italics added.) This point, essentially ignored by appellant, requires that there be some connection with the State of California sufficient to satisfy the demands of due process. (1d) Nowhere in McGee is it suggested that acts constituting appointment of the commissioner for service of process under section 1611 alone are sufficient for jurisdiction over the foreign corporation. Whether the acts of Delta did, in fact, constitute appointment of the commissioner need not be decided here. (6a) Because the insurance contract does not have a substantial connection with California, we need not determine whether Delta may properly be regarded as coming within the scope of sections 1610 and 1611. "Traditional notions of fair play and substantial justice" would be offended by forcing Delta into a California action under the facts shown by the record.
In analyzing the due process issue in this case, we refer to the familiar trilogy consisting of International Shoe, supra, McGee v. International Life *1436 Ins. Co., supra, and Hanson v. Denckla (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].
As noted, International Shoe established a due process test based upon certain "minimum contacts." (Internat. Shoe Co. v. Washington, supra, 326 U.S. at p. 316 [90 L.Ed. at p. 102].) Under this test, the court upheld the exercise of in personam jurisdiction because of the solicitation activities of International Shoe Company salesmen in the forum State of Washington. In McGee the court went much further, upholding the use of the California service of process statute where defendant's only contacts with California were the mailing of an offer of reinsurance and the acceptance of premiums mailed from California. (7) However, the broad scope of jurisdiction augured by McGee was limited in the same term when the court announced in Hanson that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." (Hanson v. Denckla, supra, 357 U.S. at p. 251 [2 L.Ed.2d at p. 1296, 78 S.Ct. at p. 1238].) The court halted the pattern of expansion, holding that personal jurisdiction over a trustee could not be maintained where the plaintiff-settlor who at first resided in Pennsylvania moved to Florida and there received the benefits of the income from a Delaware trust. The court stated: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Id. at p. 253 [2 L.Ed.2d at p. 1298, 78 S.Ct. at p. 1240].)
The Hanson court's rationale in distinguishing McGee stems in part from this point: "[T]he record discloses no instance in which the [defendant] performed any acts in Florida that bear the same relationship to the agreement as the solicitation in McGee. Consequently, this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Florida." (Hanson v. Denckla, supra, 357 U.S. at p. 252 [2 L.Ed.2d at p. 1297, 78 S.Ct. at p. 1239].)
The clear implication is that by soliciting the contract at issue in McGee, the defendant had "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Hanson, supra, 357 U.S. at p. 253 [2 L.Ed.2d at p. 1298, 78 S.Ct. at p. 1240].) In later cases, the Supreme Court supplemented the "purposefully avails" language of Hanson to require that the defendant's conduct and connection with the forum state be such that he "could reasonably *1437 have anticipated being `haled before a [court of that state].'" (Kulko v. California Superior Court, supra, 436 U.S. 84, 97-98 [98 S.Ct. 1690, 1699], quoting Shaffer v. Heitner (1977) 433 U.S. 186, 216 [53 L.Ed.2d 683, 705, 97 S.Ct. 2569, 2586].)
(5c) The Hanson approach, reemphasizing minimum contacts and requiring invocation of the benefits and protections of the forum state's laws, closely examines the actions of the defendant rather than the plaintiff regarding the forum state and underlines the "substantial connection" between a contract and the forum state required by McGee. (Lone Star Motor Import, Inc. v. Citroen Cars Corp, (S.D.Tex. 1960) 185 F. Supp. 48, 56.)
Determination of a "substantial connection" requires an evaluation of the facts. (6b) Looking to the conduct of Delta, the most that can be said is that Delta impliedly agreed to insure a California resident by reimbursing its Michigan-domiciled subscriber for services performed in California on behalf of California residents. We know of no decision which recognizes personal jurisdiction based on this factor alone. Unlike McGee, there is no evidence of direct contact with the forum state by Delta; there is no evidence that an insurance policy was delivered to appellant in California, that subscribers were solicited by Delta in California, or that premiums were received by Delta from California. There is no evidence that Delta engaged in "economic activity" in California. In fact, the evidence shows that Delta carefully avoided contact with California by paying the insurance claim directly to Larry Martin in Michigan.
Further, there is no evidence that Delta purposefully conducted activities invoking the benefits and protections of California law or did anything which would have provided notice it would be "haled" into court in California. These factors are essential to the assumption of jurisdiction. (L.D. Reeder Contractors of Ariz. v. Higgins Industries (9th Cir.1959) 265 F.2d 768, 773.) Delta's contacts with California simply do not meet the standards enunciated in International Shoe, McGee and Hanson.
Few cases have applied sections 1610 and 1611. In Polglase v. Illinois National Insurance Company (N.D.Cal. 1960) 183 F. Supp. 519, service upon defendant insurer was proper under section 1610 where the insured was a temporary resident of California while performing military duty, the policy of insurance was issued to plaintiff while a California resident, the insured vehicle was garaged in California, the policy endorsement was changed to reflect a California address and premiums for the policy were mailed from California. The court found "[t]hese acts are enough to constitute appointment of the commissioner for service of process if § 1610 is complied with." (Id. at p. 521, italics added.) Not only are the contacts with *1438 the forum significantly less here, but there also is nothing in the record to show compliance with section 1610.
(8) Appellant argues at length that California's interest in protecting its citizens weighs in favor of exerting jurisdiction over the Michigan corporation. The Supreme Court in McGee remarked in its opinion on California's "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." (McGee v. International Life Ins. Co., supra, 355 U.S. at p. 223 [2 L.Ed.2d at p. 226, 78 S.Ct. at p. 201].) There is no evidence here of Delta's refusal to pay any claim. Appellant concedes that reimbursement was made directly to the subscriber, Larry Martin, and that he has refused to compensate her. Certainly, the state's interest in subjecting the insurer to jurisdiction is less compelling under these circumstances. Appellant also concedes that she has recourse directly against her former husband.
(9) Appellant also argues that the burden on Delta of defending in California is minimal, thereby justifying jurisdiction in the forum state. However, in Hanson, it was noted that "[h]owever minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him." (Hanson v. Denckla, supra, 357 U.S. at p. 251 [2 L.Ed.2d at p. 1296].)
The trial court properly granted Delta's motion to quash and dismissed the action against it.

DISPOSITION
The order appealed from is affirmed. Delta to have its costs on appeal.
Martin, Acting P.J., and Ardaiz, J., concurred.
NOTES
[1] All statutory references are to the Insurance Code unless otherwise indicated.