Filed 12/22/23  Gilmore v. Gintel CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALEXIE GILMORE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ERNEST GINTEL et al., <br><br> Defendants and Respondents. | B310815 <br><br> (Los Angeles County Super. Ct. No. SC129317) |

APPEAL from judgments of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Reversed with directions.

Alexie Gilmore, in pro. per.; Bernard Bilderbeck, in pro. per., for Plaintiffs and Appellants.

Ritt Hodges, D. Jay Ritt and Warren O. Hodges, Jr., for Defendants and Respondents.

————————————

Former tenants Alexie Gilmore and Bernard Van Bilderbeek brought an action against landlord Shirley Gintel and others for claims arising out of the tenancy, including claims for discrimination and restitution of a security deposit.[1] The trial court concluded Shirley, who died during the pending litigation, held a life estate in the rental property. The court sustained a demurrer by Ernest Gintel and Jarrett Grode on the ground that they were remaindermen with no liability for the claims of former tenants. The court granted a motion to quash service in favor of nonresident remainderman Taylor Grode. On appeal from the judgments following these orders, Gilmore and Van Bilderbeek contend Ernest, Jarrett, and Taylor are liable as co-owners, beneficiaries, and/or successors in interest.[2] We conclude the demurrer should have been overruled as to Ernest, because the evidence showed Ernest owned a portion of the property in fee simple during the tenancy. In addition, Jarrett and Taylor, as the landlord's successors in interest, are potentially liable for restitution of a security deposit under Civil Code section 1950.5. Therefore, we reverse the judgments with directions.

[1] Because multiple parties and participants share the last name Gintel or Grode, they will be referred to individually by their first names for ease of reference.

[2] On August 10, 2023, Gilmore and Van Bilderbeek filed a motion in this appellate court to strike portions of the respondents' brief for failing to provide adequate citations to the record on appeal. The motion is denied.

## FACTS AND PROCEDURAL HISTORY

### Family History and Recorded Deeds

Shirley and her husband had three children: Ernest, Philip Rudolph (Rudy), and Victoria (known after marriage as Victoria Grode).

In 1984, Shirley and her husband took title to property commonly known as 754 North Alfred Street in Los Angeles (the Alfred property), which was improved with a four-unit apartment building. The parents transferred portions to Ernest and Victoria as gifts. Ultimately, in 1989, a grant deed was recorded giving 50 percent of the property to Shirley and her husband as community property, 25 percent to Ernest, and 25 percent to Victoria.

None of the deeds subsequently recorded for the Alfred property concerned or affected Ernest's original 25 percent interest.

Shirley and her husband later transferred their undivided 50 percent interest in the property to themselves as cotrustees of the Eugene and Shirley Gintel Revocable Living Trust dated May 10, 1984 (the family trust). After her husband's death, Shirley, as trustee, transferred 25 percent of the Alfred property interest to Trust A. Ultimately, she granted Trust A's interest to Rudy, subject to the reservation of a life estate in favor of Shirley.

Shirley transferred the remaining 25 percent of the family trust's interest in the Alfred property to Trust B. From Trust B, she granted 12.5 percent to Rudy and 12.5 percent to Ernest, both interests subject to an existing life estate in favor of Shirley.

3

Victoria passed away, leaving two children, Jarrett and Taylor. Separate litigation in probate court between Shirley and the executor of Victoria's estate established the ownership interests of Victoria's estate. Rudy and Ernest did not appear or participate in the trial. The probate court found Victoria's interest in the Alfred property was subject to reservation of a life estate in favor of Shirley and her husband for their joint lifetimes and for the lifetime of the survivor. The probate court also found Victoria's estate to have an interest in a separate commercial property on Melrose Avenue, whose major tenant is a pawnshop operated by Rudy and Ernest; the probate court determined Victoria's estate's interest was subject to a similar life estate in favor of Shirley and her husband. The probate court directed the executor of Victoria's estate to execute quitclaim deeds transferring a life estate to Shirley in the income attributable to the estate's interests in the Alfred and Melrose properties. The executor of Victoria's estate recorded a deed granting Shirley a life estate in the income attributable to the 25 percent interest in the Alfred property owned by Victoria's estate. When the probate court subsequently approved the executor's final account, the court ordered distribution of the estate's 25 percent interest in certain properties, including Alfred and Melrose, to Jarrett and Taylor in equal shares.

Accordingly, based on the evidence in the appellate record, the following ownership interests had been recorded for the Alfred property as of August 2003: 37.5 percent owned by Rudy, subject to a life estate for Shirley; 12.5 percent owned by Ernest, subject to a life estate for Shirley, and 25 percent owned by Ernest in fee simple; 12.5 percent owned by Jarrett, subject to a life estate for Shirley in the income from the property; and 12.5

4

percent owned by Taylor, subject to a life estate for Shirley in the income from the property.

## Apartment Lease and Legal Action

On January 1, 2012, Gilmore and a roommate entered into a lease agreement to rent an apartment at the Alfred property. The lease listed Shirley as the landlord/lessor/agent and stated that rent payments were to be made to Shirley at a neighboring address. The people authorized to receive rent payments were Shirley or Rudy at the Melrose property. Shirley and Rudy were authorized to manage the property, and any notices to the owner or manager were to be provided to Shirley or Rudy at the Melrose property. Shirley executed the lease agreement as owner/agent.

In 2017, Van Bilderbeek began occupying the apartment with Gilmore and sought to be substituted as a tenant under the lease, but his application was rejected. On August 21, 2017, Shirley filed an unlawful detainer action against Gilmore and unauthorized subtenants. On October 30, 2017, Shirley filed another unlawful detainer complaint against Gilmore and unauthorized subtenants.

On January 15, 2018, Gilmore and Van Bilderbeek vacated the apartment. On May 23, 2018, Gilmore and Van Bilderbeek filed an action in pro. per. against Shirley, Rudy, and the family trust for discrimination, violation of the Los Angeles Rent Stabilization Ordinance, retaliation, restitution of a security deposit, and breach of contract.

On July 16, 2018, Shirley passed away. Under the terms of the trust, the assets were to be distributed to Rudy, Ernest, and Victoria's children. On February 25, 2019, over the objection of

Shirley's lawyer, the trial court consolidated the landlord's unlawful detainer action and Gilmore and Van Bilderbeek's discrimination action.

## Allegations of Operative Amended Complaint

On June 19, 2019, with the trial court's permission, Gilmore and Van Bilderbeek filed an amended complaint against the family trust, Shirley's estate, Rudy, Ernest, Jarrett, and Taylor alleging the same causes of action based on the following factual allegations.

## Demurrer

On October 9, 2019, Ernest and Jarrett filed a demurrer on the grounds that, as beneficiaries, they were not individually liable for actions of the estate or the trust, and they did not become liable as successors in interest to the trust assets. In addition, they argued that the facts did not support a cause of action for retaliation.

On July 1, 2020, Gilmore and Van Bilderbeek opposed the demurrer. They argued that Rudy commenced the unlawful detainer action on behalf of the trust, falsely representing himself to be the trustee, and his actions were ratified by the remaining defendants. After Shirley's death, the unlawful detainer action was continued for trial and Shirley's former attorney had opposed consolidation of the cases. In addition, the plaintiffs argued that retaliation was correctly alleged.

Ernest and Jarrett filed a reply with respect to their demurrer. A hearing was held on July 8, 2020. No reporter's

6

transcript was included in the record on appeal. Gilmore and Van Bilderbeek stated they were proceeding by settled statement, but no settled statement has been made part of the record on appeal. The trial court ordered the parties to submit evidence of ownership of the property during the relevant period.

Gilmore and Van Bilderbeek filed a supplemental brief concerning the ownership of the property. Ernest and Jarrett also filed a supplemental brief.

A hearing was held on the demurrer on September 23, 2020, and the court took the matter under submission. The court took judicial notice of the grant deeds and court orders filed by both parties. On September 28, 2020, the trial court sustained the demurrer without leave to amend. The court found the plaintiffs had failed to allege any specific acts by Ernest or Jarrett or any other legal basis for holding them liable for the alleged actions of the trust before the property passed to them as beneficiaries or remaindermen. Neither Ernest nor Jarrett was named as a successor trustee.

**Motion to Quash**

On November 1, 2019, Taylor filed a motion to quash service for lack of personal jurisdiction. In support of the motion, she filed a declaration stating that she has been a resident of New York for the past 12 years, and worked as a teacher in Brooklyn, New York for the past 9 years. She does not maintain a residence in California or conduct business in California. Her

sole contact with California is through visits with family and friends once or twice a year.

After her mother passed away, Taylor inherited a partial interest in the Alfred Street property, subject to a life estate held by Shirley. Taylor did not receive any income from the property during Shirley's lifetime and had no involvement in the management of the property. She received income from the property for the first time in June 2019. That same month, she learned from her uncle Rudy about the lawsuit and the purported service of the complaint on her by mail to her uncles' pawnshop business. She has no knowledge of her uncles' business and has not been personally served with the complaint.

Gilmore and Van Bilderbeek opposed the motion to quash. They argued that Civil Code section 1962.7 allows for service on a landlord by mail at the place where a tenant pays rent in the event that there was no address for personal service in the lease. They paid their rent at the pawnshop. In addition, they argued, Taylor's passive ownership of the property conferred long arm jurisdiction. Gilmore submitted her own declaration and portions of the lease agreement in support of the opposition.

Taylor filed a reply in support of her motion to quash service. She argued that because her contact with California was limited to visits and she only recently inherited a minority ownership interest in the property after the events giving rise to the action, the court did not have specific jurisdiction over her. She asserted that she was never Gilmore and Van Bilderbeek's landlord, because she was not a party to the rental agreement, nor was she an owner of the property during the relevant time.

Gilmore and Van Bilderbeek filed a rebuttal to Taylor's reply and requested judicial notice of grant deeds and court

8

orders. Gilmore filed a declaration stating that Taylor was her landlord at all times.

A hearing was held on the motion to quash service on September 3, 2020, and the court took the matter under submission. On September 10, 2020, the trial court granted the motion to quash. The court found the controversy did not arise out of Taylor's contacts with California, because the discrimination and retaliation allegations occurred during Shirley's tenancy, before Taylor had a right to any income from the property. Liability as alleged in the complaint was based on allegations that Taylor permitted, authorized, and ratified all actions taken by Rudy with respect to the plaintiffs, without further evidence or information. In addition, the court concluded exercise of jurisdiction over Taylor did not comport with fair play and substantial justice. Taylor receives passive income and had no active participation in management of the property. Shirley received the income, was responsible for management, entered into the lease with Gilmore in her individual capacity, and brought the unlawful detainer action in her individual capacity. There was no evidence that Taylor played any role with respect to any aspect of the tenancy at issue. Taylor only began receiving passive income after the plaintiffs vacated the premises and Shirley passed away.

**Judgments and Appeal**

On November 20, 2020, the trial court entered a judgment of dismissal as to Ernest and Jarrett. On January 7, 2021, the court entered a judgment of dismissal as to Taylor. Gilmore and

Van Bilderbeek filed a timely notice of appeal from the November 20, 2020 order and the January 7, 2021 order.

## DISCUSSION

### Demurrer

#### A. Standard of Review

"When we review a judgment dismissing a complaint after the trial court has sustained a demurrer without leave to amend, our first step is to review the complaint de novo, assuming the truth of properly pleaded or implied factual allegations, to determine whether the complaint states facts sufficient to state a cause of action. [Citation.] Then, if we conclude that the complaint does not state a cause of action, 'we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court has abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.]' [Citation.]" (*Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 410–411.)

#### B. Ernest's Property Interest

Gilmore and Van Bilderbeek contend that the complaint states a cause of action against Ernest based on his ownership of the property under the recorded deeds. We agree.

A 1984 deed granted the Alfred property to Eugene, Shirley, Ernest, and Victoria as joint tenants in fee simple. In

10

1989, the joint tenants executed a deed that gave 25 percent of the Alfred property to Ernest in fee simple. Ernest did not make an appearance or participate in the litigation of Victoria's estate. None of the court orders with respect to Victoria's estate had any effect on Ernest's property interest. In August 2002, Shirley transferred 12.5 percent of the Alfred property from Trust B to Ernest, subject to a life estate for herself. There was no evidence, however, that Shirley retained a life estate in the original 25 percent interest granted to Ernest, or that Ernest granted Shirley a life estate in the original 25 percent interest that he held in fee simple.

The complaint alleged that Ernest had an ownership interest in the Alfred property, and that he authorized and ratified Rudy's actions with respect to the property. Although not a model of clarity, the allegations of the complaint sufficiently allege that Ernest authorized Shirley and Rudy to act as his agent with respect to his ownership interest in the Alfred property. None of the documents subject to judicial notice established otherwise as a matter of law. The trial court erred by sustaining the demurrer on the ground that Ernest's interest was solely that of a remainderman.

## C. Jarrett's Property Interest

Gilmore and Van Bilderbeek contend that Jarrett's interest in the Alfred property was not subject to a life estate for Shirley because the deed granting a life estate to Shirley was limited to the income from the property and the probate court ordered distribution of Victoria's interest in the property to her children without allowing for a life estate to Shirley. The plaintiffs'

11

analysis of the property transfers is incorrect, but we agree the complaint states a cause of action for return of a security deposit against Jarrett as a successor in interest.

" 'A life estate is an estate whose duration is limited to the life of the person holding it or of some other person.' " (*Peterson v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 844, 850–851.) Some life estates are "absolute," meaning the owner of the life estate may use the land in the same way as an owner in fee simple other than to commit waste. (*Forrest v. Elam* (1979) 88 Cal.App.3d 164, 170 (*Forrest*); Civ. Code, § 818.) "Others are known as determinable or contingent because of various sorts of limitations placed upon the life estate." (*Forrest*, at p. 170.)

Unless there is an express statement of intent to sever title from the right to enjoy the benefits of ownership, a grant of the income from productive property confers a corresponding estate. (See Annot., Grant or gift of income as carrying an absolute interest in the property, 174 A.L.R. 319 (originally published 1948).) If the income from certain property is granted for life, it confers a life estate in the property to the recipient; if the income is granted for an unlimited time, it confers an absolute interest in the property. (*Ibid*; see *Steeve v. Yaeger* (1956) 145 Cal.App.2d 455, 462 [reservation of unqualified right to receive income from property for life conveyed a life estate in the property itself].)

During Victoria's lifetime, she received 25 percent of the Alfred property in fee simple. After her death, pursuant to a court order, her executor recorded a deed granting a life estate to Shirley in the income attributable to the estate's 25 percent interest in the Alfred property. Shirley's life estate in the income from Victoria's interest in the Alfred property was equivalent to a life estate in the property itself. After transferring the life estate,

12

the estate held only a remainder interest in 25 percent of the property.  When the probate court ordered distribution of the estate's property interests to Jarrett and Taylor, the estate could only transfer the interest in the Alfred property that it had.  Jarrett received half of the estate's interest in the Alfred property, which was a remainder interest subject to Shirley's life estate.

On appeal, Gilmore and Van Bilderbeek concede that to the extent Shirley held a life estate in the property, Jarrett, as a remainderman, is not liable for her actions.  They contend, however, that the complaint states a cause of action against Jarrett for return of a security deposit under Civil Code section 1950.5, subdivision (j)(1), as a successor in interest.  We agree that Gilmore has stated a cause of action for restitution of her security deposit.

Civil Code section 1950.5 provides, in pertinent part, that upon the termination of the landlord's interest in the premises by death, the landlord's agent shall, within a reasonable time, either transfer the portion of the security remaining after lawful deductions to the landlord's successor in interest or return the portion of the security remaining after lawful deductions to the tenant, with an accounting.  (Civ. Code, § 1950.5, subd. (h).)  "In the event of noncompliance with subdivision (h), the landlord's successors in interest shall be jointly and severally liable with the landlord for repayment of the security, or that portion thereof to which the tenant is entitled, when and as provided in subdivisions (e) and (g)."  (Civ. Code, § 1950.5, subd. (j)(1).)

Gilmore commenced litigation against Shirley seeking restitution of her security deposit within months of vacating the

13

premises and failing to receive her deposit. During the litigation, Shirley died and Jarrett became a successor in interest. Based on the allegations of the complaint and the judicially noticed documents, Gilmore stated a cause of action for restitution of her security deposit against Jarrett as Shirley's successor in interest. Jarrett's demurrer must be overruled as to the cause of action concerning the security deposit.

## Motion to Quash

The plaintiffs contend the trial court erred in concluding that Taylor did not have sufficient contacts in California to exercise specific jurisdiction over her. We agree.

### A. General Principles and Standard of Review

Under California's long-arm statute, our courts may exercise jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) The federal Constitution permits a state to exercise personal jurisdiction over a defendant if the defendant has sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Int'l Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

Personal jurisdiction may be general or specific. (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 265–266 (*Thomson*).) "A court has general jurisdiction over defendants who are at home in the court's forum; general jurisdiction allows a court to hear any claim against a defendant, regardless of where the underlying

14

events occurred." (*Bader v. Avon Products, Inc.* (2020) 55 Cal.App.5th 186, 193.)  A defendant may be subject to specific jurisdiction when (1) the defendant has purposefully availed himself or herself of forum benefits; (2) the controversy at issue arises from or is related to the defendant's forum-related contact; and (3) assertion of jurisdiction comports with fair play and substantial justice.  (*Thomson*, *supra*, 113 Cal.App.4th at p. 265.)

"[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors.  A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.  It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' " (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 113.)  The question is whether, "the defendant's conduct and connection with the forum State are such that he [or she] should reasonably anticipate being haled into court there." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.)

"On a challenge to personal jurisdiction by a motion to quash, the plaintiff has the burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction.  [Citation.]  The plaintiff must come forward with affidavits and other competent evidence to carry this burden and cannot simply rely on allegations in an unverified complaint.  [Citation.]  If the plaintiff meets this burden, 'it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable.'  [Citation.]"

15

(*Buchanan v. Soto* (2015) 241 Cal.App.4th 1353, 1362 (*Buchanan*).)

"When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).)

" 'Determination of the *merits* of the complaint [is] not within the scope of the issues raised by the motion. [Fn. omitted.]' [Citation.] Thus a motion to quash does not serve the function of a demurrer as to whether the complaint states a cause of action." (*Kroopf v. Guffey* (1986) 183 Cal.App.3d 1351, 1360.)

### B. Purposeful Availment

Decades ago, Taylor inherited remainder interests in real properties in California. Upon Shirley's death, Taylor became the owner of 12.5 percent of the Alfred property, which is improved with rental units. She never disclaimed or disposed of her California property interests. By owning real property in California, Taylor has purposefully availed herself of the benefits and protections of the laws of California. (See *Buchanan*, *supra*, 241 Cal.App.4th at p. 1363 [by owning properties in California, defendant availed himself of the benefits and protections of the laws of California].) Upon Shirley's death, Taylor became liable for obligations and expenses related to her interest, such as taxes and maintenance costs. When Taylor received and retained

property interests in California, her contacts with California became purposeful.

## C.  Arising From Contacts

" 'The second prong of the specific jurisdiction test requires that the controversy relate to or arise out of the defendant's contacts with the forum.  The question is whether the plaintiff's causes of action arose out of or had a substantial connection with a relationship the defendant purposefully established with the forum state.  [Citation.]  "[T]he cause of action must arise out of an act done or transaction consummated in the forum . . . .'  [Citation.]  Stated another way, there must "be a substantial nexus or connection between the plaintiff's cause of action and the defendant's forum contacts . . . ."  [Citation.]  "[T]he 'arising out of or relating to' standard is in the disjunctive, and is intended as a relaxed, flexible standard . . . ."  [Citation.]'  [Citation.]"  (*Buchanan*, *supra*, at p. 1364.)

We independently conclude there is a substantial connection or nexus between Taylor's co-ownership of the Alfred rental property as a successor in interest to Shirley and Gilmore's cause of action for restitution of a security deposit under Civil Code section 1950.5.

## D.  Reasonableness

" '[O]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport

with "fair play and substantial justice." ' [Citation.] Courts may evaluate the burden on the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and 'the "shared interest of the several States in furthering fundamental substantive social policies." ' [Citation.]" (*Vons*, *supra*, 14 Cal.4th at pp. 447–448.)

Although Taylor claims it is unreasonable to subject her to jurisdiction in California because she had no ownership or management of the Alfred property before Shirley died, Taylor assumed obligations upon Shirley's death as a successor in interest. It is in the state's interests and the interests of the plaintiffs to have the lawsuit heard and decided where the rental property is located. If tenants could not maintain an action against a nonresident landlord as the successor in interest to the owner of a life estate, the tenant protections provided by California statutes would be greatly diminished. Moreover, in this case, there are co-owners who reside in California to assist with defense of the action. It is not unreasonable to subject Taylor to jurisdiction in California under the facts of this case.

## DISPOSITION

The judgments, the order sustaining the demurrer, and the order granting the motion to quash are reversed. The trial court is directed to enter a new and different order denying the motion to quash, overruling the demurrer in its entirety with respect to Ernest Gintel, overruling the demurrer as to the cause of action for restitution of a security deposit with respect to Jarrett Grode, and sustaining the demurrer as to the remaining causes of action

alleged against Jarrett Grode.  In the interests of justice, the parties are ordered to bear their own costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


We concur:



BAKER, Acting P. J.



KIM, J.